# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RODERICK RENEE SAWYER,

    Plaintiff

v.

DR. ROMEO ARANAS, et. al.,

    Defendants

Case No.: 3:18-cv-00346-RCJ-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 31

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff is an inmate incarcerated within the Nevada Department of Corrections (NDOC), and brought this pro se civil rights complaint under 42 U.S.C. § 1983. (ECF No. 8.) On July 6, 2020, the court granted Defendants an extension of time to file dispositive motions, giving them until September 21, 2020, to file their motion. (ECF No. 27.) That order was served on Plaintiff electronically at LCC, which was his address of record at that time, and the order was returned as undeliverable, noting that Plaintiff was not at LCC. (ECF No. 28.) The court issued an order directing Plaintiff to file his updated address within 30 days (ECF No. 29), which was also returned as undeliverable from LCC (ECF No. 30).

Defendants filed their Motion for Summary Judgment. (ECF Nos. 31, 31-1 to 31-5, 33-1, 33-5, errata at 37-1.) LCC sent a notice indicating Plaintiff was not at LCC, and he had not filed a change of address with the court. (ECF No. 36.) Judge Jones entered an order advising Plaintiff of the requirements of responding to a motion for summary judgment, referred to as a *Klingele*

1   order. (ECF No. 35.) On December 29, 2020, the undersigned gave Plaintiff an additional 30

2   days to file a response to Defendants' motion for summary judgment. (ECF No. 38.) At that time,

3   Plaintiff still had not filed a notice of change of address or updated his address with the court.

4   This order was also returned as undeliverable. (ECF No. 39.)

5        On February 3, 2021, District Judge Jones issued an order noting that NDOC's inmate

6   database indicated that Plaintiff was being housed at the Humboldt Conservation Camp (HCC);

7   however, he still had not updated his address with the court in compliance with Local Rule IA 3-

8   1. Judge Jones ordered Plaintiff to file his updated address within 30 days, and directed the Clerk

9   to mail Plaintiff a copy of docket entries 29, 31-39 (which included Defendants' motion for

10  summary judgment) with the court. (ECF No. 40.) The docket entry reflects that these docket

11  entries were mailed to Plaintiff at HCC on February 4, 2021. (*Id.*)

12       On February 12, 2021, Plaintiff filed his notice of change of address, indicating his new

13  address at HCC (ECF No. 42), but he never filed a response to Defendants' motion for summary

14  judgment and has not filed anything else with the court since that time.

15       In an abundance of caution, on April 20, 2021, the court ordered Defendants to serve

16  Plaintiff with a copy of the motion for summary judgment and exhibits at HCC, and gave

17  Plaintiff until May 11, 2021, to file a response to Defendants' motion. (ECF No. 43.) Defendants

18  served Plaintiff with the motion and exhibits at HCC on April 21, 2021. (*See* ECF Nos. 44, 44-

19  1.)

20       Plaintiff had not filed a response as of May 11, 2021; therefore, the undersigned issued a

21  report and recommendation to grant the motion for summary judgment. (ECF No. 46.)

22       On May 13, 2021, a response to the motion for summary judgment was docketed, and the

23  certificate of service indicates it was served on May 11, 2021. (ECF Nos. 47, 47-1.) As a result,

1 | the undersigned withdrew the prior report and recommendation, and gave Defendants an

2 | opportunity to file a reply brief, which they did. (ECF Nos. 48, 49.)

3 |      After a through review, the court recommends that Defendants' motion for summary

4 | judgment be granted.

5 |                                   **I. BACKGROUND**

6 |      The court screened Plaintiff's complaint and determined that he stated a colorable Eighth

7 | Amendment deliberate indifference to serious medical need claim against defendants Dr. Aranas,

8 | Dr. Adamson, Donnelly, and Wickham. His other claims were dismissed. (ECF No. 3.)

9 |      Plaintiff alleges that during the week of August 3, 2017, he sustained an injury to his

10 | right wrist. He requested medical treatment, and saw a doctor, Dr. Adamson, on August 8, 2017.

11 | Plaintiff avers that Dr. Adamson gave Plaintiff a shot for his pain, which he was later told was

12 | cortisone. Plaintiff claims he began to experience stomach pains, delusions, pale skin, blood

13 | thinness, fatigue and dehydration, and believed this was either from the injection or from being

14 | prescribed too many ibuprofen. He subsequently experienced white discoloration where the

15 | injection was administered. He claims that Dr. Adamson would only give him ibuprofen, and the

16 | discoloration began to spread up his arm. He saw another doctor, Dr. Hanf (not a defendant),

17 | who prescribed naproxen in place of the ibuprofen, which helped to relieve his pain. Dr. Hanf

18 | referred Plaintiff to a dermatologist and prescribed Prednisone. Plaintiff filed a grievance,

19 | requesting to see a dermatologist, but Donnelly, Wickham and Dr. Aranas ignored his request

20 | and did not arrange for him to immediately see a dermatologist.

21 |      Defendants move for summary judgment arguing: (1) Plaintiff did not have a serious

22 | medical need; (2) even if he had a serious medical need, all of Plaintiff's medical conditions were

23 |

treated; (3) responding to grievances (by defendants Donnelly, Wickham and Dr. Aranas) does

not amount to personal participation sufficient to rise to the level of deliberate indifference;

(4) Dr. Adamson did not personally participate in the alleged deliberate indifference;

(5) Defendants are entitled to qualified immunity; and (6) Plaintiff is not entitled to the

injunctive relief he seeks.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary

judgment when "the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

other hand, where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no

dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

one party must prevail as a matter of law"). In considering a motion for summary judgment, all

reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

*Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

5

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Eighth Amendment Deliberate Indifference to Serious Medical Need

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

**B. Medical Evidence**

On August 7, 2017, Plaintiff complained of right wrist pain, stating that he was injured while working in the culinary. He reported he had never felt anything like this. (ECF No. 33-1 at 6.) Dr. Adamson ordered x-rays of the right wrist. No fracture or dislocation was noted and the x-ray was unremarkable. (ECF No. 33-2 at 2.) Plaintiff was given a wrist splint to wear, and 800 mg of Motrin to take for three months. He also gave Plaintiff a Cortisone injection. (ECF No. 33-3 at 5.)

On September 22, 2017, Plaintiff filed a grievance where he said he injured his right hand and had to see medical and pain medication was issued, and a cortisone steroid shot was given by

1  Dr. Adamson on August 8, 2017. Plaintiff indicated he agreed to the injection, but then suffered

2  damage to his skin where the shot was injected. (ECF No. 31-2 at 13, 15-16.) Nurse Donnelly

3  responded to the informal level grievance, stating that the doctor had ordered a consult and it was

4  awaiting approval from the Utilization Review Panel. He was told to come to sick call if his

5  condition worsened. (*Id*. at 14.)

6        Plaintiff sent a kite on October 23, 2017, stating that he needed to know about the shot

7  given to him on August 8, 2017, and asked for a doctor to look at his right hand. There is a

8  notation that he spoke to Dr. Adamson who said that blanching at the injection site is a side

9  effect of the steroid injection. Dr. Adamson also instructed should wear a wrist splint at all times.

10 (ECF No. 33-4 at 12.)

11       Plaintiff was seen by Dr. Adamson on October 23, 2017, for complaints of

12 hypopigmentation in the right hand/wrist at the injection site.  The progress notes state that no

13 treatment was necessary at that time as hypopigmentation is a side effect of the shot and may

14 dissipate with time. He received a wrist splint to assist with healing of the wrist. (ECF No. 33-1

15 at 5.)

16       There is a notation on November 29, 2017, that Plaintiff was to be evaluated for

17 complaints of skin discoloration of the right hand. (ECF No. 33-1 at 5.) He reported that the area

18 of discoloration had extended to the forearm. His pain was resolved in his wrist and he was

19 asymptomatic other than the discoloration. (ECF No. 33-1 at 5.) Plaintiff was referred for

20 evaluation, diagnosis and treatment with dermatology. (*Id*. at 4; ECF No. 33-3 at 4.) Plaintiff was

21 formally referred to dermatology for hypopigmentation on the right hand for three months

22 following administration of a local steroid injection to the right wrist. (ECF No. 31-2 at 12.) This

23 was deferred with a notation to refer him to dermatology when a dermatologist was available.

1   (*Id*.)

2       Plaintiff filed a first level grievance (ECF No. 31-2 at 6), and Wickham responded,

3   stating that on December 19, 2017, Plaintiff's consult with dermatology was deferred, but an

4   appointment would now be scheduled. Again, he was told that if his condition worsened he

5   should go to sick call. (ECF No. 31-2 at 7.)

6       Plaintiff filed a second level grievance (ECF No. 31-2 at 2), which Dr. Aranas responded

7   to, stating that he was answered correctly at the previous levels and Plaintiff would be seen by a

8   dermatologist when a dermatologist was available. (ECF No. 31-2 at 3.)

9       Plaintiff sent a kite on January 11, 2018, stating that his skin issues were getting worse.

10  There is a notation that he was seen by the doctor. (ECF No. 33-4 at 10.)

11      Plaintiff was seen on January 17, 2018, for complaints of hypopigmentation and sporadic

12  pain in the right hand. Dr. Hanf noted that the dermatology consultation was unavailable at that

13  time. Dr. Hanf changed Plaintiff's pain medication and ordered a follow up in six months.

14  (ECF No. 33-1 at 3; ECF No. 33-3 at 4.)

15       On July 11, 2018, Plaintiff sent a kite stating his right wrist had been in pain for two

16  weeks due to his injury on August 6, 2017, and cortisone shot he received on August 8, 2017. He

17  asked about the white discoloration that was still visible on the right arm, as he had been told he

18  would be scheduled to see the dermatologist back on December 19, 2017. He was advised that he

19  would be scheduled in the order that the kite was received. There is another notation that

20  Plaintiff was seen on November 12. (ECF No. 33-4 at 8.)

21      There is a note on September 18, 2018, that Plaintiff should recover pigmentation, though

22  it may be slow, and a specific type of lotion may help. (ECF No. 33-1 at 3.0

23

Plaintiff sent another kite on November 24, 2018, stating that the cortisone shot really caused severe pain in his right wrist and hand for months. He was apparently seen on November 29, 2018. (ECF No. 33-4 at 9.)

According to Nurse Russelle Donnelly, within NDOC, the Utilization Review Panel (URP) authorizes sending inmates to outside medical providers. Individual medical providers within NDOC make referrals or recommendations regarding sending inmates to outside medical providers, and the URP considers those referrals or recommendations, but the individual medical providers do not authorize sending inmates to outside medical providers. (Donnelly Decl., ECF No. 31-3.)

**3. Analysis**

First, Defendants assert that neither Plaintiff's wrist pain nor his hypopigmentation was a serious medical need.

Contrary to Defendants contention, the evidence does reflect that Plaintiff suffered from a serious medical need in terms of his wrist pain and subsequent hypopigmentation. The wrist pain was significant enough to warrant treatment with medication and a steroid injection. Moreover, the hypopigmentation warranted several appointments as well as referral to a dermatologist. In addition, Plaintiff's subsequent kites indicated that he suffered from pain in connection with the hypopigmentation. Therefore, summary judgment is not appropriate on the basis that Plaintiff did not suffer from a serious medical need.

Second, the court will address the deliberate indifference prong of the Eighth Amendment claim.

Defendants assert that Plaintiff received adequate medical treatment in the form of an

x-ray, a cortisone shot, a wrist brace, anti-inflammatory medication, lotion, and a referral to the dermatologist.

The court agrees that the evidence demonstrates that Dr. Adamson provided Plaintiff with appropriate treatment. Dr. Adamson saw Plaintiff for his original complaints of a wrist injury and pain, and examined Plaintiff and x-rays were taken and Dr. Adamson provided Plaintiff with a wrist splint, a cortisone injection and anti-inflammatory medication. Dr. Adamson also saw Plaintiff for his original complaint of discoloration of his skin following the injection, and said there was no treatment at that time as that was a side effect of the injection and would likely dissipate with time. Plaintiff was subsequently seen by Dr. Hanf for his complaints related to the hypopigmentation (and Dr. Hanf is not a defendant), and there is no evidence in the record that Plaintiff presented complaints of further pain associated with the hypopigmentation to Dr. Adamson.

Moreover, Plaintiff has not provided any evidence to support his claim that he complained to Dr. Adamson of other symptoms such as stomach pains, fatigue and weight loss in connection with his hypopigmentation. While there was a delay in getting Plaintiff to see a dermatologist for his condition, Defendants have produced evidence that the individual providers are not responsible for scheduling outside appointments, and Plaintiff has not submitted any evidence to raise a dispute regarding Dr. Adamson's involvement in getting Plaintiff to see a dermatologist.

Plaintiff argues that if Dr. Adamson would have explained the possible side effects of the shot or given him the name of the shot, Plaintiff could have refused the shot or at least done research about it. Even if it is true that Dr. Adamson did not explain possible side effects or tell

1   Plaintiff the shot he was getting was a cortisone shot, that would amount to negligence at most,

2   and not deliberate indifference to a serious medical need.

3          For these reasons, summary judgment should be granted in Dr. Adamson's favor.

4          Defendants Donnelly, Wickham and Dr. Aranas argue that their involvement was limited

5   to denial of Plaintiff's grievance, and that does not amount to personal participation for purposes

6   of deliberate indifference under the Eighth Amendment. This court has rejected the argument

7   that if the defendant's role is limited to responding to a medical grievance, he or she cannot be

8   subject to liability. In *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), the Ninth Circuit

9   found that where the warden and his assistants were aware of grievances regarding inappropriate

10  medical treatment and failed to act, they were not entitled to summary judgment. Similarly, in

11  *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014), where the NDOC medical director

12  had personally denied a grievance despite being aware that the optometrist had recommended

13  cataract surgery, the Ninth Circuit concluded that a jury could find that the medical director

14  contributed to the decision to refuse treatment in conscious disregard to a risk to the inmate's

15  health.

16         There is a difference between, for example, a grievance about an event that has already

17  occurred, and for which a grievance responder cannot take any action to remedy the inmate's

18  complaint, and a grievance that puts a grievance responder on notice of a potential constitutional

19  issue and the grievance responder takes no reasonable action. For example, if an inmate files a

20  grievance to exhaust administrative remedies *after* an incident involving excessive force has

21  occurred (and presuming the grievance does not assert that the inmate is still in danger), the

22  grievance responder cannot take any action to prevent the conduct that has already occurred. On

23  the other hand, if an inmate files a grievance and says that he continues to be denied necessary

12

medical care, and the grievance responder ignores the request, or does not act reasonably in response to the request, such action or the failure to act, could subject the grievance responder to liability. Liability will, of course, turn on the nature of the defendant's grievance response and the circumstances surrounding the constitutional claim in each individual case.

Therefore, these Defendants are not entitled to summary judgment on the basis that their involvement was limited to responding to a grievance.

Donnelly, Wickham and Dr. Aranas also argue that once Dr. Hanf made the referral to the URP, it was within the URP's purview to approve the referral, and they did not have authority to approve the referral or schedule the appointment with the dermatologist, and so they did not personally participate in the alleged constitutional violation.

Plaintiff's response does not dispute that Donnelly, Wickham or Dr. Aranas were not personally involved in the decision to defer Plaintiff's visit with the dermatologist. Since Plaintiff has not raised a genuine dispute of material fact in response to Defendants' evidence that neither Donnelly, Wickham nor Dr. Aranas personally participated in the decision to defer or delay Plaintiff's visit with the dermatologist, summary judgment should also be granted in favor of Donnelly, Wickham and Dr. Aranas. As such, the court need not reach Defendants' remaining arguments.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 31).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

       2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 26, 2021

_____
William G. Cobb
United States Magistrate Judge